UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE W. WOLFF,<br><br>Defendant. | Case No. 20-cv-03315-SI<br><br>**ORDER GRANTING PLAINITIFF'S MOTION FOR SUMMARY JUDGMENT** |

On July 2, 2021, the Court heard oral argument on plaintiff's motion for summary judgment. Having considered the parties' arguments made during the hearing and in the papers, the Court hereby GRANTS the motion for summary judgment in full for the reasons explained below.

## BACKGROUND[1]

In 2011, the government sued Mr. Wolff for unpaid income taxes for the years 2000-2005 and unpaid employment taxes from 2001-2004. Dkt. No. 38-1 at 1[2] (2011 Complaint). The 2011 case ultimately settled. Dkt. No. 38 at 2 (MSJ).

In the action now before the Court, the government seeks from Mr. Wolff unpaid taxes, late filing, and late payment penalties for years 2007-2018. Dkt. No. 11 (Amended Complaint). In support of its summary judgment motion, the government submits a declaration from Jeanette Farmer, a 20 year veteran of the IRS, attaching various documents detailing Mr. Wolff's liabilities.

---

[1] Unless otherwise stated, the following facts are undisputed.

[2] For ease of reference, citations to page numbers refer to the ECF branded number in the upper right corner of the page.

Dkt. No. 38-1 at 18 (Farmer Decl.); Dkt. No. 49-2 at 62[3] (Farmer Deposition Excerpts).

Mr. Wolff is 80 years old, lives in San Francisco California, works as an attorney, and owns the two bedroom condominium he lives in on 2350 Hyde Street, in the heart of Russian Hill, unmortgaged. Dkt. No. 49-1 at ¶27 (Wolff Decl.); Dkt. No. 38-1 at 230[4] (Wolf Deposition Excerpts). Mr. Wolff primarily practices in the area of construction law. Dkt. No. 49-1 at ¶16 (Wolff Decl.). At the time of the 2008 recession, Mr. Wolff employed four or five full time employees including two attorneys. Dkt. No. 49-1 at ¶ 16 (Wolff Decl.). Since late 2019, Mr. Wolff no longer employs associates and has only two part-time employees. Dkt. No. 49-1 at ¶18 (Wolff Decl.). ¶

In 2005, Mr. Wolff's sister died and her husband died as well six months later. Dkt. No 49-1 at 7. This left two children in their 20s, including one who is disabled and agoraphobic, with no close relative other than Mr. Wolff to provide support. *Id*.

As of December 31, 2011, one of Mr. Wolff's principal clients, a construction company, failed to pay a total of more than $250,000 in fees and expenses and other clients failed to pay for fees and costs. Dkt. No. 49-1 at ¶¶20-21.

---

[3] **Farmer Deposition:**
Q: …what is your position at the IRS?
A: Revenue officer.
Q: Revenue officer. And what does a revenue officer do?
A: Revenue officer, the main function is the collections of taxes, unpaid taxes, and tax returns.
Q: And how long have you been doing that?
A: Twenty years come this June [2021], so 19 years.

[4] **Wolff Deposition:**
Q: And you own your primary residence; is that right?
A: That's correct.
Q: And where is that?
A: It's in San Francisco.
Q: What is the address?
A: 2350 Hyde.
Q: Okay and is there a mortgage on that property?
A: Not currently.
…
Q: Was there a mortgage on that property in 2007?
A: I don't think so.
Q: Do you recall there being a mortgage on that property anytime between 2007 to present?
A: No.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then FED. R. CIV. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

For summary judgment, the Court must view evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment..." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Parties must present admissible evidence. FED. R. CIV. P. 56(c).

**DISCUSSION**

"The district courts of the United States . . . shall have such jurisdiction . . . to render . . . judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). The government can establish that "tax assessment was properly made and notice and demand for payment were sent," based on the "highly probative" Form 4340. *United States v. Vacante*, 717 F. Supp. 2d 992, 1004 (E.D. Cal. 2010); *see also Huff*

*v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993) ("IRS Form 4340 provides at least presumptive evidence that a tax has been validly assessed."). Further, the Ninth Circuit explicitly rejected arguments that Forms 4340 are inadmissible evidence because they are computer generated. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. May 24, 1993) (Court rejected defendants' arguments that Form 4340 cannot be relied upon because it is generated by a computer, saying: "Form 4340 is probative evidence in and of itself and, in the absence of contrary evidence, is sufficient to establish that notices and assessments were properly made.") (internal citations and quotations omitted).

Here the government submitted 4340 forms as to Mr. Wolff for all the relevant years in question – 2007-2018. Dkt. 38-1 at 24-95 (4340 forms attached to Ms. Farmer's declaration). Further, the government submitted evidence showing how credit from the levies on Mr. Wolff's social security income has been applied to his tax assessments. Dkt. No. 38-1 at 18-23, 96-153 (Farmer Decl. and exhibits); Dkt. No. 50 at 3 – 7 (Reply).

Mr. Wolff makes three overarching arguments against the government's motion for summary judgment, which the Court will address in turn below. None of the arguments overcomes the government's compelling evidence.

First, Mr. Wolff argues the tax form 4340 does not establish presumptive liability for taxes, penalties, and interest owed and payments received. Dkt. No. 49 at 8 (Opposition). Mr. Wolff explicitly admits "the issues here are not whether 'notice and demand' were properly sent." Dkt. No. 49 at 9 (Opposition). Instead he argues because the evidence showing how his credits have been applied to his outstanding taxes is inadmissible, the 4340 forms do not definitively establish what he owes. *Id*. He goes on to emphasize the 4340 forms may be rebutted by contrary evidence. *Id*. However, Mr. Wolff does not submit any contrary evidence. He merely attacks the government's evidence as inadmissible – an argument that fails as discussed below. As stated above, the Ninth Circuit makes clear forms 4340 are presumptively admissible and Mr. Wolff has not overcome that presumption. His first argument fails.

Second, Mr. Wolff argues the government failed to credit levies on his social security income against the taxes owed and alleges that despite numerous inquiries "to local revenue agent Ms. Farmer on this topic … she never explained – or appeared unable to explain – what had happened

4

to those funds, or how they had been applied to his tax obligation, if at all." Dkt. No. 49 at 2 (Opposition).

The government filed a declaration from Ms. Farmer in support of its motion, attaching voluminous exhibits detailing how Mr. Wolff's levies have been credited to his taxes owed. Dkt. No. 38-1 at 18 (Farmer Decl.). Mr. Wolff argues the evidence is inadmissible because Ms. Farmer "only testifies that she has access to various computer programs of unknown type" and therefore does not have personal knowledge nor can Ms. Farmer truly opine as to what credit has been applied to taxes owed Dkt. No. 49 at 3 (Opposition).

This argument also fails. Ms. Farmer has worked for the IRS for over 20 years and has extensive knowledge of IRS practices, polices, and computer systems. Dkt. No. 38-1 at 18 (Farmer Decl.); Dkt. No. 49-2 at 62 (Farmer Deposition Excerpts). In her declaration she states that in her "capacity as a Revenue Officer … [she] has researched and computed the balance due from George W. Wolff for unpaid outstanding federal income taxes (form 1040) for the taxable years 2007-2008." Dkt. No. 38-1 at 19. She further declares that:

> **To compute an accurate current balance due with respect to the assessments, credit entries (such as payments or adjustments) must be subtracted from, and accrued interest amounts must be added to, the assessed amounts. The IRS relies on the Integrated Data Retrieval System ("IDRS") to store and track tax account information**. The IDRS is also used to make up-to-date interest calculations for balances owed; the system performs interest computations applying the applicable statutory interest rates, compounded daily. I am informed and believe that the floating rate of interest on tax underpayments has been programmed into Internal Revenue Service computers. I am familiar with the proper use of the IRS computer interest calculation functions. In particular, I am familiar with the proper use of the IRS computer command code "INTSTD" which provides a calculation of accrued interest and penalties to any requested date, on unpaid tax assessments for a particular taxpayer.

Dkt. No. 38-1 at 19-20 (emphasis added). Ms. Farmer's declaration goes on, further explaining the inputs and outputs of the IRDS and how to read and understand the IRDS module printouts. Dkt. No. 38-1 at 20 – 21. Based on the IRDS calculations and printouts attached to Ms. Farmer's declaration, and helpfully summarized in the government's reply brief, the government clearly lays out (1) the year and month Mr. Wolff's social security income was levied (2) the amount levied and (3) the tax period the levy-turned-credit was applied to. Dkt. No. 38-1 at 18-23, 96-153 (Farmer

5

1   Decl. and exhibits); Dkt. No. 50 at 3 – 7 (Reply).

2       Mr. Wolff does not accept that his remaining balance could be as large as it is, given the number of levies against his social security checks. 49-1 at ¶¶ 2-8. However, many of the levy-credit was applied to previous years dating back as far as 1999, because while the instant action only pertains to 2007-2018, Mr. Wolff has a history of failing to full-pay his taxes. For example, the levy applied to Mr. Wolff's January 2011 social security check was applied to money owed on his 1999 taxes. Dkt. No. 50 at 4 (Reply).

    Third, Mr. Wolff argues the late filing and late payment penalties assessed against him should be forgiven because of "undue hardships"[5] that prevented him from timely paying his taxes. Dkt. No. 49 at 3-8 (Opposition). Mr. Wolff provides a number of reasons he could not timely pay his taxes, including:

- <u>For Tax Years 2007-2008</u>: Mr. Wolff's sister and brother in law died in 2005 leaving two children in their 20s with no close relative other than defendant, including a disabled son suffering from agoraphobia (Dkt. No. 49-1 at ¶ 28 (Wolff Decl.);
- financial difficulties after the 2008 financial crisis;
- as of December, 2011, one of defendant's primary clients failed to pay defendant more than $250,000 in fees and costs (Dkt. No. 49-1 at ¶ 20 (Wolff Decl.);
- reduced income due to the COVID pandemic.

    None of these reasons account for Mr. Wolff failing to full pay over a decade's worth of taxes. Further, Mr. Wolff ignores the fact that he owns his two bedroom condominium in the heart of the Russian Hill neighborhood in San Francisco, unmortgaged, and it is worth well more than

---

[5] During the July 2, 2021 hearing, Mr. Wolff's counsel pointed the Court to a line item in one of the many pages of exhibits attached to Ms. Farmer's declaration. The line, dated September 24, 2010, appears on a Form 1040 and reads: "CURRENTLY NOT COLLECTIBLE/HARDSHIP STATUS." Dkt. No. 38-1 at 26 (emphasis in original). Mr. Wolff's counsel argues this single line from 2010 shows the IRS knew Mr. Wolff was suffering hardships and therefore that status should somehow attach to the entire 2007-2018 period in question. However, the lines below this – and indeed, the record as a whole – indicate this status was not permanent, nor has Mr. Wolff offered any evidence indicating he believed the status continued. As evidenced by the rest of the record, including the levying of Mr. Wolff's social security and the instant action, the "hardship status" was not continued.

what he owes in taxes.[6]  Dkt. No. 38 at 6 (Motion).

### CONCLUSION[7]

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the government's motion for summary judgment.  The Court hereby reduces to judgment Mr. Wolff's unpaid federal income tax liabilities for the 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, and 2017 tax years in the amount of $430,359.24 as of June 4, 2021, plus interest and statutory additions in accordance with 28 U.S.C. § 1961(c)(1) and 26 U.S.C. §§ 6601 and 6621, which have accrued and will continue to accrue according to law until judgment is paid, less any applicable credits and payments.

**IT IS SO ORDERED**.

Dated: July 5, 2021

SUSAN ILLSTON
United States District Judge

---

[6] Mr. Wolff acted as his own co-counsel at the hearing on summary judgment.  At the hearing, he stated that he has now arranged for a reverse mortgage which will allow him to pay all taxes due.  No explanation was provided, either by Mr. Wolff or his co-counsel, why Mr. Wolff could not have taken a loan on his multi-million dollar home years ago.

[7] In conjunction with his opposition to summary judgment, Mr. Wolff filed various objections to evidence.  Dkt. Nos. 49-3 (Objections to Evidence in Farmer Decl.) and 49-4 (Objections to Evidence in Petrila Decl.).  For example, Mr. Wolff objects to Ms. Farmer's discussion and attachment of the 4340 forms showing Mr. Wolff's liability, arguing the evidence should be excluded on "relevance" grounds.  Dkt. No. 49-3 at 3 (Objections to Evidence in Farmer Decl.).  Even if Mr. Wolff had offered evidence rebutting the presumptive accuracy of the 4340 forms – which he did not – the forms themselves would still be relevant.  Mr. Wolff's objections to evidence are OVERRULED.